IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ELBA RODRIGUEZ<br>1356 Detroit Avenue<br>Youngstown, Ohio 44502 | )<br>)<br>) | CASE NO.<br><br>JUDGE |
| Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES AND REINSTATEMENT** |
| YOUNGSTOWN CITY SCHOOL<br>DISTRICT BOARD OF EDUCATION<br>474 Bennington Avenue<br>Youngstown, Ohio 44505 | )<br>)<br>)<br>)<br>) | **JURY DEMAND ENDORSED HEREIN** |
| and | )<br>) | |
| ANINA KARLOVIC<br>119 Jade Circle<br>Canfield, Ohio 44406 | )<br>)<br>)<br>) | |
| Defendants. | ) | |

Plaintiff, Elba Rodriguez, by and through undersigned counsel, as her Complaint against the Defendants, states and avers the following:

## PARTIES

1. Rodriguez is a resident of the City of Youngstown, County of Mahoning, State of Ohio.

2. Defendant Youngstown City School District Board of Education ("YCSD") is a political subdivision of the state created by Chapter 306 of the Ohio Revised Code.

3. YCSD is an Ohio public school district with its principal place of business in the City of Youngstown, County of Mahoning, State of Ohio.

4. During all times material to the Complaint, YCSD was an "employer" within the meaning of R.C. § 2744.01(F).



5. During all times material to the Complaint, YCSD was an "employer" within the meaning of 42 U.S.C. § 12111.

6. Upon information and belief, Anina Karlovic is a resident of the State of Ohio.

7. At all times herein, Karlovic was acting in the course and scope of her employment.

8. Karlovic is and, at all times hereinafter mentioned, was an individual who was a supervisor at YCSD and who acted directly or indirectly in the interest of YCSD.

9. Karlovic was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq.*

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Rodriguez is alleging Federal Law Claims under the Age Discrimination in Employment Act of 1967 as amended 29 U.S.C. §§ 621–634 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*

11. This Court has supplemental jurisdiction over Rodriguez's state law claims pursuant to 28 U.S.C. § 1367, as Rodriguez's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

13. All material events alleged in this Complaint occurred in Mahoning County.

14. Within 300 days of the conduct alleged below, Rodriguez filed a Charge of Discrimination with the Equal Opportunity Employment Commission ("EEOC"), Charge No. 532-2019-01977 against Defendant.

15. On or about December 15, 2020, the EEOC issued and mailed a Notice of Right to Sue letter to Rodriguez regarding the Charge of Discrimination.

16. Rodriguez received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit 1.

17. Rodriguez filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

18. Rodriguez has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

19. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## FACTS

20. Rodriguez is a former employee of Defendants.

21. At times relevant herein, Rodriguez was over the age of 40.

22. Rodriguez is currently 64 years old.

23. Rodriguez is Puerto Rican.

24. Rodriguez is Hispanic.

25. Rodriguez is from New York, New York.

26. Rodriguez speaks English with an accent.

27. Rodriguez speaks fluent Spanish.

28. Rodriguez speaks in a loud tone.

29. Rodriguez speaks in a distinctive manner.

30. Rodriguez presents a speaking pattern, intonation, and volume that is distinctive to persons of Puerto Rican ancestry raised in New York City.

31. Rodriguez's speaking pattern, intonation, and volume is a characteristic shared by persons of Puerto Rican ancestry raised in New York City.

32. Rodriguez has a learning disability.

33. Rodriguez has difficulty reading and writing.

34. Rodriguez has a ninth-grade education.

35. Rodriguez moved to Ohio from New York in 2001.

36. YCSD hired Rodriguez in 2001 as a Janitorial Assistant.

37. At all times herein, Rodriguez was able to perform the duties of a Janitorial Assistant.

38. At all times herein, Rodriguez was qualified for the position of Janitorial Assistant.

39. YCSD has a significant number of Hispanic students.

40. YCSD has a significant number of students that speak Spanish.

41. Rodriguez was assigned to work at Choffin Career and Technical Center ("Choffin.")

42. Rodriguez was the oldest Janitorial Assistant at Choffin.

43. Spanish-speaking YCSD students would speak to Rodriguez in Spanish.

44. Rodriguez would speak with Spanish-speaking YCSD students in Spanish.

45. Dana, last name unknown, was a custodian at Choffin.

46. Dana is white.

47. Upon information and belief, Dana does not speak Spanish.

48. Dana criticized Rodriguez for speaking Spanish to Spanish-speaking students.

49. Dana told Rodriguez to stop speaking junk.

50. Dana referred to the Spanish language as junk.

51. Dana told Rodriguez to speak English.

52. Dana told Rodriguez that Dana was the only American.

53. Dana told Rodriguez that she felt bad for immigrants.

54. Rodriguez objected to Dana calling Spanish junk.

55. Rodriguez objected to Dana telling Rodriguez to Speak English.

56. Rodriguez objected to being told that she was not American.

57. Rodriguez objected to being told that she was an immigrant.

58. Rodriguez felt demeaned by Dana calling Spanish junk.

59. Rodriguez felt demeaned by Dana telling Rodriguez to speak English.

60. Rodriguez felt demeaned to being told that she was not American.

61. Rodriguez felt demeaned to being told that she was an immigrant.

62. Rodriguez told Dana that Rodriguez and Spanish-speaking YCSD students speaking in Spanish was part of their heritage.

63. In 2017 or 2018, Karlovic became a Principal at Choffin.

64. Karlovic is white.

65. Upon information and belief, Karlovic does not speak Spanish.

66. Karlovic is significantly younger than Rodriguez.

67. Karlovic is a supervisor and/or manager at Choffin.

68. Karlovic was a supervisor and/or manager of Rodriguez.

69. Prior to Karlovic's arrival, Rodriguez averaged one written reprimand every two years.

70. Prior to Karlovic's arrival, Rodriguez was assigned to work on the first floor of Choffin.

71. After Karlovic's arrival, Rodriguez was reassigned to work on the fourth floor of Choffin.

72. As part of Rodriguez's reassignment, Rodriguez was required to stay on the fourth floor.

73. As part of Rodriguez's reassignment, Rodriguez was not permitted to leave the building.

74. As part of Rodriguez's reassignment, Rodriguez did not have access to a refrigerator or a freezer.

75. As a janitor, Rodriguez did not have access to a refrigerator or a freezer.

76. Rodriguez wanted to bring ice to work so that she could drink cold beverages.

77. Rodriguez was only able to obtain or store ice in a freezer in the Culinary Center.

78. The Culinary Center was on Rodriguez's assigned floor.

79. Rodriguez occasionally obtained ice from the Culinary Center.

80. Upon information and belief, significantly younger and/or non-Hispanic and/or significantly younger non-Hispanic janitors were permitted to have access to ice.

81. Upon information and belief, significantly younger and/or non-Hispanic and/or significantly younger non-Hispanic janitors were not written up for accessing to ice.

82. On one occasion, Rodriguez entered the Culinary Center and was spoken to by students in Spanish.

83. Rodriguez was asked to taste a piece of meat for which the students were practicing preparation.

84. Rodriguez tasted the piece of meat and gave her opinion on its preparation.

85. Rodriguez then left.

86. The culinary instructor reported Rodriguez's actions.

87. Rodriguez was subsequently written up for her interaction with the students.

88. Upon information and belief, significantly younger and/or non-Hispanic and/or significantly younger non-Hispanic janitors were permitted to interact with students.

89. Upon information and belief, significantly younger and/or non-Hispanic and/or significantly younger non-Hispanic janitors were not written up for interacting with students.

90. On April 17, 2018, Rodriguez received a written reprimand for being outside of Choffin during Rodriguez's working hours.

91. On April 18, 2018, Rodriguez was accused of being aggressive in Choffin's administrative offices, being insubordinate, using inappropriate language, and using profanity.

92. Rodriguez was accused of stating "This is bullshit."

93. Rodriguez did not state "This is bullshit."

94. Rodriguez was not aggressive, insubordinate, profane or using inappropriate language.

95. Upon information and belief, significantly younger and/or non-Hispanic and/or significantly younger non-Hispanic janitors were insubordinate or used the word bullshit.

96. Upon information and belief, significantly younger and/or non-Hispanic and/or significantly younger non-Hispanic janitors were insubordinate or used the word bullshit and were not written up.

97. On April 20, 2018, Rodriguez received a written reprimand for the April 18, 2018 allegation.

98. On April 20, 2018, Rodriguez was placed on a last chance agreement.

99. As part of the last chance agreement, Rodriguez was accused of receiving four reprimands within the previous two years.

100. The allegations in the last chance agreement were not true.

101. The allegations in the last chance agreement were made without context.

102. As a result of the last chance agreement, Rodriguez was told that she would be terminated if Rodriguez violated YCSD policies.

103. Upon information and belief, significantly younger and/or non-Hispanic and/or significantly younger non-Hispanic janitors were not placed on last chance agreements.

104. On December 3, 2018, Instructor Lori Yanacos-Clark sent an email to Karlovic.

105. In Yanacos-Clark's email, Yanacos-Clark reported that Rodriguez entered the Culinary Center and disrupted it by getting or asking for ice, that on November 30, 2018 Rodriguez took little containers of hot sauce and barbecue sauce, that on December 3, 2018 Rodriguez entered the Culinary Center and asked for orange juice, then later again asked for ice.

106. Yanacos-Clark's December 3, 2018 email also alleged future events, that on December 4, 2018 Rodriguez asked for ice.

107. Yanacos-Clark's email accused Rodriguez of getting "nasty" with her on December 3, 2018.

108. On December 3, 2018, Rodriguez attempted to find orange juice for a diabetic person who had a low blood sugar emergency.

109. On December 3, 2018, Rodriguez spoke to Yanacos-Clark and other Culinary Center instructors in her normal tone and volume.

110. Rodriguez did not receive a written reprimand for any of Yanacos-Clark's allegations.

111. Rodriguez did not have the opportunity to rebut any of Yanacos-Clark's allegations.

112. Yanacos-Clark's allegations had no basis in fact.

113. On December 5, 2018, Karlovic accused Rodriguez of entering the Culinary Center for ice.

114. Rodriguez did not receive a written reprimand for Karlovic's

115. On December 27, 2018, Mike Saville reported that he observed Rodriguez cutting meat while watching television in a classroom.

116. Upon information and belief, Mary Francis (last name unknown) is a Janitorial Assistant.

117. Mary Francis is non-Hispanic white.

118. Mary Francis watched television while on break.

119. Upon information and belief, Mary Francis was not disciplined for watching television while on break.

120. On December 27, 2018, Rodriguez was accused of being out of the building.

121. Rodriguez was not outside of the building during work hours.

122. On January 3, 2019, Rodriguez was told that her employment was being terminated.

123. Defendants stated reason for terminating was a series of infractions, including four that Yanacos-Clark sent to Karlovic by email on December 3, 2018, Karlovic's allegation from December 5, 2018, and two allegations from December 27, 2018.

124. At no time prior to January 3, 2019 was Rodriguez issued a reprimand for any of the allegations in the January 3, 2019 termination letter.

125. Rodriguez had no opportunity to challenge any of the allegations against her.

126. Rodriguez disputes all of the allegations against her that led to her termination.

127. Upon information and belief, significantly younger and/or non-Hispanic and/or significantly younger non-Hispanic janitors were advised of policy infractions.

128. Upon information and belief, significantly younger and/or non-Hispanic and/or significantly younger non-Hispanic janitors were advised of actions that could lead to their termination.

129. Upon information and belief, significantly younger and/or non-Hispanic and/or significantly younger non-Hispanic janitors were given an opportunity to respond to any allegations made about them.

130. On or around January 3, 2019, Defendants informed Rodriguez that Defendants were terminating her employment for violating her last chance agreement.

131. Rodriguez was told that a hearing would be held on January 4, 2019.

132. Defendants gave Rodriguez the opportunity to resign her position on January 4, 2019 so that Rodriguez would not lose her retirement benefits.

133. On January 4, 2019, Rodriguez chose to resign her position in order to maintain her retirement benefits.

134. Rodriguez was forced to resign her position.

135. But for Defendants' threat to terminate Rodriguez which would result in Rodriguez losing her retirement benefits, Rodriguez would not have resigned her position.

136. Defendants constructively discharged Rodriguez.

137. Prior to ending Rodriguez's employment, Defendants never issued any written communication to Rodriguez for any allegation that would violate Rodriguez's last chance agreement.

138. Defendants' allegation of Rodriguez violating her last chance agreement had no basis in fact.

139. Defendants' allegation of Rodriguez violating her last chance agreement did not actually motivate Defendants' decision to constructively discharge Rodriguez.

140. Defendants' allegation of Rodriguez violating her last chance agreement did not actually motivate Defendants' decision to force Rodriguez's resignation.

141. Defendants' allegation of Rodriguez violating her last chance agreement was insufficient to motivate the constructive discharge of Rodriguez.

142. Defendants' allegation of Rodriguez violating her last chance agreement was insufficient to motivate the forced resignation of Rodriguez.

143. Defendants' allegation of Rodriguez violating her last chance agreement was pretext to constructively discharge Rodriguez.

144. Defendants' allegation of Rodriguez violating her last chance agreement was pretext to force Rodriguez to resign her position.

145. Defendants did not place similarly situated custodians who were significantly younger than Rodriguez, who engaged in conduct similar to Rodriguez's on last chance agreements.

146. In the alternative, Defendants did not place similarly situated custodians who were of a different race and/or national origin and/or ethnicity than Rodriguez, who engaged in conduct similar to Rodriguez's on last chance agreements.

147. In the alternative, Defendants did not place similarly situated custodians who were significantly younger than Rodriguez and of a different race and/or national origin and/or ethnicity than Rodriguez who engaged in conduct similar to Rodriguez's on last chance agreements.

148. Defendants did not constructively discharge similarly situated custodians who were significantly younger than Rodriguez who engaged in conduct similar to Rodriguez's.

149. In the alternative, Defendants did not constructively discharge similarly situated custodians who were of a different race and/or national origin and/or ethnicity than Rodriguez who engaged in conduct similar to Rodriguez's.

150. In the alternative, Defendants did not constructively discharge similarly situated custodians who were significantly younger than Rodriguez and of a different race and/or national origin and/or ethnicity than Rodriguez who engaged in conduct similar to Rodriguez's.

151. At the time of her constructive discharge, Rodriguez was 62-years old.

152. Upon information and belief, subsequent to Rodriguez's constructive discharge, Defendants hired an individual significantly younger than Rodriguez to replace Rodriguez.

153. Upon information and belief, subsequent to Rodriguez's constructive discharge, Defendants hired an individual of a different race and/or ethnicity and/or national origin than Rodriguez to replace Rodriguez.

154. Upon information and belief, subsequent to Rodriguez's constructive discharge, Defendants hired a white college student in their twenties to replace Rodriguez.

155. The above facts demonstrate that Defendants engaged in a pattern and practice of age discrimination.

156. The above facts demonstrate that Defendants engaged in a pattern and practice of race and/or national origin and/or ethnicity discrimination.

157. There was a causal connection between Rodriguez's age and Defendants' constructive discharge of Rodriguez.

158. In the alternative, there was a causal connection between Rodriguez's race and/or national origin and/or ethnicity and Defendants' constructive discharge of Rodriguez.

159. In the alternative, there was a causal connection between Rodriguez's age and race and/or national origin and/or ethnicity and Defendants' constructive discharge of Rodriguez.

160. As a direct and proximate result of Defendant's conduct, Rodriguez suffered and will continue to suffer damages.

### COUNT I: AGE DISCRIMINATION IN VIOLATION OF THE ADEA.
**(Against Defendant YCSD Only)**

161. Rodriguez restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

162. Rodriguez is 64 years old.

163. At all times relevant, Rodriguez was a member of a statutorily-protected class under the ADEA.

164. YCSD treated Rodriguez differently from other similarly situated employees based on her age.

165. As of January 2019, Rodriguez was fully qualified for her position and employment with the YCSD's.

166. On or about January 3, 2019, YCSD terminated Rodriguez's employment without just cause.

167. In the alternative, on January 4, 2019 YCSD constructively discharged Rodriguez.

168. Rodriguez, age 62 at the time of her termination, was a member of a statutorily-protected class under the ADEA at the time she was discharged from her employment with the YCSD's.

169. After terminating Rodriguez, YCSD replaced Rodriguez with a person who was significantly younger and/or not belonging to the protected class under the ADEA.

170. YCSD violated the ADEA by discriminating against Rodriguez based on her age.

171. As a direct and proximate result of YCSD's conduct, Rodriguez suffered and will continue to suffer damages.

### COUNT II: RACE/ETHNICITY/NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII (Against YCSD only)

172. Rodriguez restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

173. Throughout her employment, Rodriguez was fully competent to perform the duties of her position at YCSD.

174. Rodriguez is and, at all times material herein, was a member of a protected class based on her race.

175. In the alternative, Rodriguez is and, at all times mentioned herein, was a member of a protected class based on her national origin.

176. In the alternative, Rodriguez is and, at all times mentioned herein, was a member of a protected class based on her national ethnicity.

177. Throughout Rodriguez's employment, YCSD treated Rodriguez differently than similarly situated others outside of her protected class.

178. In the alternative, throughout Rodriguez's employment, YCSD treated Rodriguez differently than similarly situated others outside of her combination of her protected classes.

179. YCSD disciplined Rodriguez.

180. On or about January 3, 2019, YCSD terminated Rodriguez's employment without just cause.

181. In the alternative, on January 4, 2019 YCSD constructively discharged Rodriguez.

182. YCSD's discipline of Rodriguez, because of her race, and/or ethnicity, and/or national origin, violated 42 U.S.C. § 2000e *et seq.*

183. YCSD's disparate treatment of Rodriguez, because of her race, and/or ethnicity, and/or national origin, violated 42 U.S.C. § 2000e *et seq.*

184. YCSD's termination of Rodriguez, because of her race, and/or ethnicity, and/or national origin, violated 42 U.S.C. § 2000e *et seq*.

185. As a direct and proximate result of YCSD's unlawful conduct, Rodriguez has suffered and will continue to suffer damages.

### COUNT III: RACE/ETHNICITY/NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF R.C. § 4112 et seq. (Against All Defendants)

186. Rodriguez restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

187. Throughout her employment, Rodriguez was fully competent to perform the duties of her position at YCSD.

188. Rodriguez is and, at all times material herein, was a member of a protected class based on her race.

189. In the alternative, Rodriguez is and, at all times mentioned herein, was a member of a protected class based on her national origin.

190. In the alternative, Rodriguez is and, at all times mentioned herein, was a member of a protected class based on her national ethnicity.

191. Throughout Rodriguez's employment, Defendants treated Rodriguez differently than similarly situated others outside of her protected class.

192. In the alternative, throughout Rodriguez's employment, Defendants treated Rodriguez differently than similarly situated others outside of her combination of her protected classes.

193. Defendants disciplined Rodriguez.

194. On or about January 3, 2019, Defendants terminated Rodriguez's employment without just cause.

195. In the alternative, on January 4, 2019 Defendants constructively discharged Rodriguez.

196. Defendants' disparate treatment of Rodriguez, because of her race, and/or ethnicity, and/or national origin, violated Ohio Rev. Code § 4112, *et seq.*

197. Defendants' discipline of Rodriguez, because of her race, and/or ethnicity, and/or national origin, violated Ohio Rev. Code § 4112, *et seq.*

198. Defendants' termination of Rodriguez, because of her race, and/or ethnicity, and/or national origin, violated Ohio Rev. Code § 4112, *et seq.*

199. As a direct and proximate result of Defendants' unlawful conduct, Rodriguez has suffered and will continue to suffer damages.

### COUNT IV: AIDING AND ABETTING DISCRIMINATION UNDER R.C. § 4112.01 *ET SEQ.* (Against Karlovic Only)

200. Rodriguez restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

15

201. Rodriguez belongs to a protected class based on her age.

202. Rodriguez belongs to a protected class based on her race and/or ethnicity and/or national origin.

203. Karlovic committed unlawful discrimination against Rodriguez.

204. Karlovic treated Rodriguez differently than similarly situated employees based on Rodriguez's membership in a protected class or classes.

205. As a result of the discrimination against Rodriguez, Rodriguez was terminated.

206. Karlovic aided, abetted, incited, compelled and/or coerced LCSD into discriminating against, disciplining and wrongfully terminating Rodriguez.

207. Pursuant to R.C. § 4112.02(J), it is an unlawful discriminatory practice, "For any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawfully discriminatory practice, to obstruct or prevent any person from complying with this Chapter or any order issued under it, or to attempt to directly or indirectly to commit any act declared by this section to be an unlawful discriminatory practice."

208. As a direct result of Karlovic's conduct, Rodriguez has suffered and will continue to suffer damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Elba Rodriguez requests judgment in her favor against Defendants, containing the following relief:

(a) A declaratory judgment that the actions, conduct, and practices of Defendants complained of herein violate the laws of the United States and the State of Ohio;

(b) An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

(c) An order directing Defendants to place Rodriguez in the position she would have occupied but for Defendants' discriminatory, retaliatory and/or otherwise unlawful treatment of her, as well as to take such affirmative action as is necessary to ensure that the effects of these

unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Rodriguez;

(d) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Rodriguez for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

(e) Awarding against each Defendant compensatory and monetary damages to compensate Rodriguez for lost wages, emotional distress, and other consequential damages, in an amount to be proven at trial;

(f) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Rodriguez for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

(g) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Rodriguez for harm to her professional and personal reputation and loss of career fulfillment;

(h) An award of damages for any and all other monetary and/or non-monetary losses suffered by Rodriguez in an amount to be determined at trial, plus prejudgment interest;

(i) An award of punitive damages;

(j) An award of costs that Rodriguez has incurred in this action, as well as Rodriguez's reasonable attorneys' fees to the fullest extent permitted by law; and

(k) Awarding such other and further relief that this Court deems necessary and proper.

        Respectfully submitted,

        */s/Angela Rodriguez* _____
        Angela Rodriguez (0074432)
        Brian D. Spitz (0068816)
        **The Spitz Law Firm, LLC**
        25200 Chagrin Boulevard, Suite 200
        Beachwood, OH 44122
        Phone: (216) 291-4744
        Fax:   (216) 291-5744
        Email: angela.rodriguez@spitzlawfirm.com
              brian.spitz@spitzlawfirm.com

        *Attorneys For Plaintiff Elba Rodriguez*

## JURY DEMAND

Plaintiff Elba Rodriguez demands a trial by jury by the maximum number of jurors permitted.

        */s/Angela Rodriguez* _____
        Angela Rodriguez (0074432)
        Brian D. Spitz (0068816)
        **The Spitz Law Firm, LLC**